## COLLINS *vs.* MYERS & MARCUS.

1. The remedy by injunction and receiver given to all creditors against insolvent traders by the act of 1881 (acts 1881, page 124) is statutory, and in order to take advantage of it, it must appear that the defendant is insolvent and that it would be of benefit to the complainant to have the relief prayed for.

2. An allegation of insolvency because the complainant's claim was not paid at maturity on demand is not sufficient, where it appears that the debtor is possessed of unincumbered assets largely more in value than the complainant's claim.

(*a*.) That the real estate of the debtor has been mortgaged, does not help a creditor who has no interest in the mortgages. If he can not attack them, and they will consume all of the realty mortgaged, a receiver for the realty would be useless to him.

(*b*.) This case is strengthened by the fact that discovery was not waived, and the answer fully meets the charge of insolvency.

Debtor and Creditor. Insolvency. Mortgages. Equity. Receiver.    Before Judge SNEAD.    Richmond County. At Chambers.    March 18th, 1882.

Reported in the decision.

M. P. CARROLL; H. D. D. TWIGGS, for plaintiff in error.

C. HENRY COHEN, for defendants.

JACKSON, Chief Justice.

This bill was filed for injunction and the appointment of a receiver under the act of 1881.    Laws of 1881, p. 124.

It will be seen by the act that the jurisdiction of equity to intervene and take possession of the property of the trader at the instance of a creditor rests mainly upon the insolvency of the debtor.    It is not the mere failure to pay, but it is the inability to pay by reason of insolvency, that gives this extraordinary remedy.    It is purely stat- utory and must be brought clearly within the statute on which the jurisdiction alone rests.    But for this statute a creditor who had not sued his claim to judgment, or did not hold some lien on the property of the debtor, could not interfere therewith in equity by injunction or receiv- ership, or any other such extraordinary remedies not within the rules of common law and common right.    This act of 1881 changes the law in this regard, and enables any creditor having any claim on the debtor to invoke the aid of equity in the use of its extraordinary powers against any trader who is insolvent.

So on the very threshold of the courts of chancery stands an impediment which bars the entrance of the

creditor until he removes it. He must show that his debtor is a trader and that he is insolvent. These complainants wholly fail to show the insolvency of this debtor, and therefore did not remove the barrier which blocked their entrance through the way this statute opened, and they should have been denied admittance. The allegation of insolvency in the bill is wholly insufficient. It is that "your orators show that said debt has matured and that payment has been properly demanded of her, the said Mrs. P. Collins, and has been refused by her, and that as Mrs. P. Collins has failed to pay at maturity after proper demand had been made, your orators allege the said Mrs. P. Collins to be insolvent."

Thus the averment of insolvency rests alone on her failure to pay at maturity, and the only allegation of fact is her failure to pay. It is a *non sequitur* that because a trader fails to pay a debt on its maturity, therefore that trader is insolvent. The bill itself, therefore, is not explicit in alleging insolvency, and has no equity in it under this statute.

The answer positively and explicitly denies the insolvency of the defendant, and sets out assets, real and personal, showing solvency by facts alleged in it. Indeed the bill itself, in the very next sentence after the above averment, in respect to insolvency, alleges that the defendant "has a large amount of assets, including choses in action and money, besides real estate, and a large stock of goods, consisting of dry goods, clothing, boots, shoes," etc.

The depositions do not help the complainant's case as made in the bill. They show only the refusal to pay the debt because of dull times and failure to collect her own debts by this trader. These cannot overcome the facts set up in the answer made in response to the bill. Discovery is not waived in the bill, and a sworn answer in response to the bill must ordinarily be overcome by two witnesses, or one with corroborating circumstances, where discovery is not waived. We

see no reason why this rule should not apply to an application for an injunction and receiver, the effect of which is to annihilate the business of the trader, strip her of all her property, and administer on her entire estate while she yet lives.   But it is unnecessary in this case to pass upon the application of that rule to the trial of interlocutory prayers for injunction or receivership, because in this case there is no sufficient allegation of insolvency, and no proof thereof at all.

That her real estate is mortgaged, cannot affect the question, because if the mortgage debt would consume all her realty, equity would not interpose against that mortgage creditor, as ruled in the case of *Barnwell et al· vs. Wofford et al.* decided at the last term, not yet reported; and if it would be more than sufficient to pay that debt, then, as no other indebtedness is shown but the debt due to complainants of some six or seven hundred dollars, she is not insolvent in view of the large amount of personalty which the bill alleges that she owns.   The decision in the case cited rests on strong reason.   The assets when seized and distributed under this statute must be applied according to the dignity of the debts—the priority of the several claims.   If, therefore, though a trader be insolvent, creditors other than the complainants have liens which would exhaust the debtor's effects before the simple contract creditors would be reached in the order of distribution, equity would not interfere with their liens at the instance of those who could realize nothing in any event.   It would be to take away from the lien creditor that which he could reach at but little expense by the ordinary process of common law courts, and waste it in the expensive administraton of a receiver, without benefiting the non-lien complainants one iota.   It would enable the complainants to play the roll of the dog in the manger, and prevent others from enjoying that which they could never use.

The conclusion we reach, therefore, is, that before a

chancellor should enjoin a trader from the free use of all his assets, real and personal, and seize all the property of every kind which the trader possesses, and place it in the hands of a receiver, it must appear clearly that the trader is insolvent, and that if her effects be seized and thus administered in chancery, the complainants would realize from that administration.

Under this statute insolvency must be alleged clearly and upon the basis of such facts as show it. This has not been done, in our judgment, in this case, either by sufficient allegations in the bill, or by sufficient proof on the hearing. The chancellor erred, therefore, in the grant of the injunction and in the seizure of the effects of defendant and placing them in the hands of a receiver.

Judgment reversed.